h LOMBARD, J.,
dissents.
Because the termination proceeding in this matter was constitutionally defective and the termination decision is not supported by clear and convincing evidence, I do not join with the majority in affirming the decision of the trial court.
In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the U.S. Supreme Court emphasized the importance of procedural due process in termination proceedings:
The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.
Id. at 753,102 S.Ct. 1388.
In this case, the Louisiana Crisis Assistance Center (LCAC),[1] a nonprofit law office specializing in indigent capital defense which represented Ms. Clanton in the criminal proceedings related to the death of her three year old daughter, provided *589 pro bono representation to Ms. Clanton in the juvenile court proceedings Lwhen her four remaining children were taken into state custody in January 2000 and continued to do so long after their criminal representation of her ended. Accordingly, at the termination hearing, Ms. Clanton’s pro bono counsel was Ben Cohen, a staff attorney in the appellate division of the LCAC. Despite Mr. Cohen’s pro bono representation, the nonprofit nature of the LCAC, a previous order granting Ms. Clanton pauper status, and the trial court’s acknowledgment that the issue of Ms. Clanton’s pauper status had been raised orally by Mr. Cohen at the status conference preceding the termination hearing, the trial court ruled in the midst of the termination hearing that because Mr. Cohen failed to file a written motion to proceed in forma pauperis in the termination proceedings he was responsible for paying the fees of the three state treatment providers subpoenaed by the defense.[2] In addition, the trial court prohibited counsel from taking writs on the issue. Accordingly, Dr. Ronald Schexnayder, M.D., Ms; Clanton’s treating psychiatrist was not called to testify at the hearing because Mr. Cohen could not commit his nonprofit law firm to pay the fees of a state contractor. The presentation of a defense was further impaired by the trial court’s refusal to admit certified medical records pertaining to Ms. Clanton’s September 2002 hospitalization for depression because counsel failed to provide copies of the records, which he received only the night before the hearing, to opposing counsel prior to the hearing. It seems fundamentally unfair to, in effect, sanction Ms. Clanton because her pro bono attorney, a criminal appellate attorney, may have committed some procedural errors due to his unfamiliarity with juvenile court proceedings and his reliance on the court’s previous determination of his client’s indigency in light of the oral discussion of the issue at the status conference ^preceding the hearing. Moreover, with regard to Ms. Clanton’s right to proceed in forma pauperis, the Louisiana Supreme Court reversed the juvenile court’s subsequent denial of her right to appeal in forma pauperis[3]. Accordingly, even though Ms. Clanton was accorded pauper status in all related juvenile court proceedings and on appeal from the termination decision, she was unable to present a full defense in the termination proceeding itself because the court ruled that she could not proceed in forma pauperis during the hearing. Furthermore, the trial court’s denial of the right to apply for a supervisory writ on the issue and insistence that her pro bono counsel was responsible for all witness fees, even though the witnesses in question provided treatment to Ms. Clan-ton in accordance with the OCS plan, substantially impacted her ability to present a defense in this matter. Thus, on the record before me, I cannot find that Ms. Clanton was provided with fundamentally *590 fair procedures in the termination hearing. See State ex rel. G.J.L., 2000-3278 (La.6/29/01), 791 So.2d 80 (parents faced with the possibility of forced dissolution of the parental rights must be provided with fundamentally fair procedures in order to ensure that children’s legal bonds are not erroneously severed from fit parents).
Moreover, even assuming arguendo that Ms. Clanton was afforded constitutional due process in the termination hearing, the state failed to put forth clear and convincing evidence to support termination of Ms. Clanton’s parental rights based on her intent to abandon them. It is undisputed that after her children were taken into custody, Ms. Clanton successfully complied with the OCS case plan from March 28, 2000, through November 2001, that her oldest son was returned to her home in September 2001, that the State initially recommended reunification for the three remaining children, and that Ms. Clanton became Useverely depressed near the third anniversary of her daughter’s death in October 2001. Despite her severe depression, however, Ms. Clanton provided for her older son, kept her house clean, and maintained her employment.
Ms. Clanton’s ability to compartmentalize her severe depression and maintain some normalcy for her older son should not be construed as intent to abandon her three younger children. Likewise, Ms. Clanton’s reluctance to return to medication for her depression is not evidence of an intention to abandon her three younger children. Ms. Clanton’s boyfriend at the time of her daughter’s death, Walter Washington, was subsequently acquitted of charges arising out of her daughter’s death, but it is undisputed that Ms. Clan-ton has a history of being involved in abusive relationships and, accordingly, her fear of letting her guard down on medication and her determination to remain vigilante is not unreasonable.
Moreover, although the State moved to terminate her parental rights because Ms. Clanton failed to communicate with her children for a six-month period, Ms. Clan-ton testified that she was not supposed to call the children’s foster home and her automobile was not mechanically sound enough to travel on the interstate. The State does not indicate where the foster home is located or why telephone communication between Ms. Clanton and her children was prohibited, asserting only that Ms. Clanton’s failure to write, visit, and provide her children with Christmas presents constitutes abandonment.
Although Ms. Clanton’s failure to communicate with her younger children for a six-month period is inexplicable and a finding that termination of her parental rights is in the best interest of the children is not foreclosed, the record before me does not support such a determination at this time. Finally, it is noteworthy that Ms. Clanton’s oldest son has been permanently reunited with his mother and, thus, inherent in any termination of Ms. Clanton’s parental relationship with the three | ¿younger children is the termination of the relationship between siblings. Accordingly, I respectfully dissent.

. The LCAC is a not-for-profit legal services organization founded by Clive Stafford-Smith in September 1993 to address the crisis in capital defense representation in the South, with an emphasis on the State of Louisiana. Under the umbrella organization of The Justice Center, the LCAC primarily focuses on litigating capital cases at the trial level to prevent the death penalty being imposed in the first place while the Capital Appellate Project operates as the appellate arm of the LCAC handling death penalty cases on appeal. Mr. Cohen, Ms. Clanton’s pro bono counsel at the termination hearing, is a staff attorney in the Capital Appellate Project.

. Specifically, at the close of testimony by Ms. Clanton's social worker, Linda Nelson, the court advised Ms. Nelson to send her bill to Mr. Cohen. The court dismissed Mr. Cohen's protest that the court had previously issued an order determining his client’s indigency and that he had raised the issue orally at the last status conference with an admonishment that, although indigency had been determined in a related proceeding, counsel had failed in his responsibility to raise the issue in written pleadings in this case.

. See State of Louisiana in the Interest of J.W., A.W., and A.W., No. 03-CC-1088 (La.5/16/03), 847 So.2d 1197 (reversing the judgment of the juvenile court denying relator’s request for pauper status on appeal and remanding the matter to the juvenile court for further proceedings). In light of this ruling, assessment of costs to the appellant are problematic.